GREGORY V. BELL,

                Plaintiff,

v.                           Case No. 3:09-cv-202-J-34MCR

E. MADAN, etc.;
et al.,

                Defendants.

_____

## ORDER

### I. Status

Plaintiff Gregory V. Bell, who is proceeding in forma pauperis, initiated this action by filing a pro se Civil Rights Complaint (Doc. #1) under 42 U.S.C. § 1983 on March 5, 2009. Plaintiff is now proceeding on his September 23, 2010 Third Amended Complaint (Complaint) (Doc. #52) with exhibits (P. Ex.). In the Complaint, he names the following individuals as Defendants: (1) Dr. Elio Madan, M.D., Chief Health Officer at Florida State Prison (FSP); (2) Dr. Victor Selyutin, M.D., a physician at FSP; and (3) William Mathews, a physician's assistant at FSP. Plaintiff asserts that the Defendants' actions violated his federal constitutional rights when they were deliberately indifferent to his serious

medical needs relating to a cyst on his testicle.  As relief, Plaintiff requests compensatory and punitive damages.

This cause is before the Court on Defendants Motion for Summary Judgment (Doc. #86) with exhibits (Def. Ex.).  Since Plaintiff is appearing pro se, the Court advised him of the provisions of Fed. R. Civ. P. 56 and gave him an opportunity to respond to the motion.  See Order of Special Appointment; Service of Process Upon Defendants; Notice to Plaintiff (Doc. #21)(setting forth the provisions of Rule 56 of the Federal Rules of Civil Procedure), filed October 5, 2009; Summary Judgment Notice (Doc. #87), filed July 12, 2011.  On January 17, 2012, Plaintiff filed a Response in Opposition to the Defendants' Motion for Summary Judgment (Plaintiff's Response) (Doc. #103) with exhibits (P. SJ Ex.) (Doc. #104), including a supporting declaration (Bell's Declaration).  This case is now ripe for review.

## II.  Summary Judgment Standard

Under Rule 56, Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or

other materials." Rule 56(c)(1)(A).[1]  An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant.  See <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996) (quoting <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 919 (11th Cir. 1993)).  "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." <u>Kesinger ex rel. Estate of Kesinger v. Herrington</u>, 381 F.3d 1243, 1247 (11th Cir. 2004).  The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial.  See <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991).

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on

---

[1]  Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions."  Rule 56 advisory committee's note 2010 Amendments.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law.  The amendments will not affect continuing development of the decisional law construing and applying these phrases.

<u>Id.</u>  Thus, case law construing the former Rule 56 standard of review remains viable and is applicable here.

file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

### III. Plaintiff's Allegations and Claims

According to Plaintiff, the following incidents relating to a cyst on his right testicle transpired while he was incarcerated at FSP from 2006 through 2007.[2] Bell began to experience testicular pain in early September 2006, see P. Exs. C; O; X; MM, and on September 12, 2006, submitted a sick call request to the medical department at FSP relating to a painful cyst on his right testicle, see Complaint at 9B; P. Ex. C. When Defendant Selyutin saw Bell on

_____

[2] According to the Florida Department of Corrections's website, Gregory V. Bell was released on September 15, 2007, and detained at the Florida Civil Commitment Center in Arcadia, Florida. See http://www.dc.state.fl.us/InmateReleases.

September 18, 2006, Bell informed Selyutin of the extreme pain caused by the cyst. Complaint at 9B. During the examination, Selyutin "touched the bottom of the Plaintiff's testicle sac" and stated, "there is nothing wrong with your testicles." Id. When Bell tried to explain the pain caused by the cyst, Selyutin failed to listen to Bell's complaints, failed to properly examine Bell, failed to refer Bell to a urologist, and refused to provide readily available pain medications. Id.

On October 18, 2006, Bell submitted a sick call request to the FSP medical department relating to the cyst on his right testicle that had grown to the size of a pea. Id. at 9C. Even after repeated complaints, Bell did not see a physician. Id. Bell submitted another sick call request to the FSP medical department on January 30, 2007. Id. According to Plaintiff, as retaliation for Bell's filing of grievances, the Defendants denied him medical treatment for the cyst on his right testicle and thereby caused him to suffer unnecessary pain for approximately eleven months (September 2006 through August 2007). Id. at 9C-9D; see P. Ex. MM, Inmate Sick Call Request (stating he had experienced pain for ten months from September 2006 through July 2007), dated July 23, 2007.

Again, on June 2, 2007, Bell submitted a sick call request to the FSP medical department regarding the painful cyst. Complaint at 9E. When Defendant Mathews examined Bell on July 5, 2007, Mathews stated, "there is no cure for the cyst[s] on your

testicles, and we cannot treat the cysts." <u>Id</u>.  In denying Bell readily available pain medications, Mathews told Bell that he could see a physician when he was released from prison.  <u>Id</u>.  On July 23, 2007, Bell submitted a sick call request to the FSP medical department.  <u>Id</u>. at 9F; P. Ex. MM.  Bell claims that he was not seen by a physician and that the Defendants falsely stated that Defendant Mathews saw him on August 2, 2007.  Complaint at 9F; <u>see</u> P. Ex. NN.

## IV. Defendants' Motion for Summary Judgment

Defendants argue that there is no genuine issue as to any material fact and that each Defendant is entitled to summary judgment as a matter of law based on the record before the Court. They contend that Plaintiff failed to state a federal constitutional claim against them.  Moreover, Defendants argue that they are entitled to qualified immunity, that Plaintiff is not entitled to compensatory and punitive damages, and that this Court should decline to exercise supplemental jurisdiction over Bell's state law negligence and medical malpractice claims.  In support of their summary judgment motion, Defendants submitted their declarations. <u>See</u> Def. Exs. B (Madan's Declaration); C (Selyutin's Declaration); D (Mathews' Declaration).

# V. Law and Conclusions

## A. Eighth Amendment Claim of Deliberate Indifference to Serious Medical Needs

As previously noted, Plaintiff asserts that the Defendants violated his federal constitutional rights when they were deliberately indifferent to his serious medical needs relating to a cyst on his right testicle. However, the record reflects that Defendants were not deliberately indifferent to Plaintiff's serious medical needs.

"To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (quoting Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)). First, the plaintiff must satisfy the objective component by showing that he had a serious medical need. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007).

> "A serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (citing Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). In either case, "the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." Id. (citation and internal quotations marks omitted).

Brown, 387 F.3d at 1351. Next, the plaintiff must satisfy the subjective component, which requires the plaintiff to "allege that

the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (setting forth the three components of deliberate indifference as "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence.") (citing Farrow v. West, 320 F.3d at 1245)).

> In Estelle[3], the Supreme Court established that "deliberate indifference" entails more than mere negligence. Estelle, 429 U.S. at 106, 97 S.Ct. 285; Farmer,[4] 511 U.S. at 835, 114 S.Ct. 1970. The Supreme Court clarified the "deliberate indifference" standard in Farmer by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S.Ct. 1970 (emphasis added). In interpreting Farmer and Estelle, this Court explained in McElligott[5] that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." McElligott, 182 F.3d at 1255; Taylor,[6] 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively

---

[3] Estelle v. Gamble, 429 U.S. 97 (1976).

[4] Farmer v. Brennan, 511 U.S. 825 (1994).

[5] McElligott v. Foley, 182 F.3d 1248 (11th Cir. 1999).

[6] Taylor v. Adams, 221 F.3d 1254 (11th Cir. 2000).

- 8 -

serious need" and that his response must constitute "an objectively insufficient response to that need").

Farrow v. West, 320 F.3d 1235, 1245-46 (11th Cir. 2003).

The United States Supreme Court has stated:

> [T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most[,] it is medical malpractice, and as such the proper forum is the state court . . . .

Estelle, 429 U.S. at 107; Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[T]he question of whether [defendants] should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment."); Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) ("Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the [inmate's] diagnosis or course of treatment support a claim of cruel and unusual punishment.").

This Court finds that the Defendants have met their initial burden of showing this Court that there are no genuine issues of material fact that should be decided at trial (with respect to Plaintiff's claim that the Defendants were deliberately indifferent to Plaintiff's serious medical needs). Defendant Madan, in his Declaration, avers that the medical providers under his supervision

provided proper medical care to Bell for the treatment of a cyst on his right testicle.

My name is Elio Madan. I am a licensed medical physician practicing in the State of Florida. I have been employed by the Florida Department of Corrections ("FDOC") as a physician and was employed as the Chief Medical Officer ("CHO") at Florida State Prison ("FSP") of the FDOC during the times discussed here, 2006-2007. I have been licensed as a physician by the State of Florida since the early 1990's and am Board Certified in Anatomic and Clinical Pathology.

In this declaration, I reference and incorporate true and correct copies of Mr. Bell's medical records from the FDOC and the Florida Civil Commitment Center ("FCCC") which are attached as exhibits to Defendants' Motion for Summary Judgment.

I have read the civil rights complaint filed by ex-inmate Gregory Bell (FDOC# 330519) and I am aware of the claims he alleges against me. His claim that I was deliberately indifferent and negligent to his medical care is untrue. Specifically, Mr. Bell alleges in the complaint that, when I was the CHO at FSP, I failed to execute my obligations and duties as a medical physician and the CHO at FSP, I failed to ensure that Mr. Bell received the necessary medical care and treatments for a cyst, I retaliated against Mr. Bell in response to when he filed grievances, and my actions injured Mr. Bell. These claims are absolutely untrue.

All of Mr. Bell's allegations in the complaint pertain to whether he received proper care and treatment to an epididymis cyst on his right testicle, while he was incarcerated at FSP.

However, a review of Mr. Bell's medical records from the FDOC regarding the claims associated with a cyst on his right testicle

demonstrate that there is no factual basis to support Mr. Bell's allegations. The records span nine (9) years where Mr. Bell's cyst was monitored by several medical practitioners with no change to his condition.

As background information, an epididymis cyst is also known as ("a.k.a.") a spermatocele. An epididymis cyst is a retention cyst and is not considered life threatening, unless there is an observable increase in size. The cyst may fluctuate slightly as the fluid within the cyst is spermatozoa, but this is not the cause of the patient's symptoms. The types of symptoms to observe are redness, pain, and swelling in the scrotum. Small cysts are best left alone as are larger cysts that are an asymptomatic condition, and only when they are causing discomfort _and_ increasing in size should additional treatment be considered, such as surgery (spermatocelectomy).

On September 11, 1998, Dr. H. Mach at Union Correctional Institution ("CI") of the FDOC evaluated Mr. Bell's complaints regarding a lump on his testicles and if the lump could be cancerous. (Def. Exhibit E-F.) Dr. Mach ordered a testicular ultrasound (a.k.a. sonogram) and a urological consult. (Id.) The ultrasound indicated a small epididymal cyst measuring 8 mm in size. (Id.) On October 1, 1998, Mr. Bell had a consult with the urology specialist, Dr. G. Miguel[7], who documented that he found no serious pathology, no asymptomatic growth, no testicular masses, and that the cyst was benign. (Id.) Examples of pathology would be hernia or tumor. Dr. Miguel recommended to discontinue the urology clinic. (Id.)

On September 18, 2006, Dr. V. Selyutin at FSP evaluated Mr. Bell's complaints by examining his testicle. (Id.) Dr. Selyutin

---

[7] The medical records reflect the name as "Dr. George G. Miquel, Jr." See Def. Ex. F at 2, Consultant's Report.

found no evidence of abnormal enlargement of the vein that is in the scrotum (varicocele), no testicular mass, and no testicle abnormality. (<u>Id</u>.)

On April 24, 2007, Dr. J. Aviles at Union CI evaluated Mr. Bell's complaints of pain on his right testicle. (<u>Id</u>.) Dr. Aviles noted no testicular masses and ordered a sonogram to verify the lack of pathology. (<u>Id</u>.) The sonogram was performed on June 5, 2007, and showed an epididymis cyst on the right testicle that measured about 7-8 mm in size and reflected no evidence of any testicle abnormalities. (<u>Id</u>.)

On July 2, 2007, Mr. W. Mathews, a physician's assistant ("PA"), evaluated Mr. Bell's complaints of intermittent soreness in his testicles. (<u>Id</u>.)

During the times discussed here, PA's had authority to provide medical care to a patient while under appropriate supervision. The supervising physician would be responsible for reviewing the PA's clinical notations within 72 hours of the clinical consultation to ensure that the PA's findings conformed with the acceptable standards of medical care and treatment, and would co-sign the notations once the review is completed. The supervising physician would not be personally required to examine the patient.

At that time, I was Mr. Mathews' supervising physician, and I reviewed the findings recorded in Mr. Bell's medical records, co-signing, the clinical notations. On July 2, 2007, after an examine [sic], Mr. Mathews found a small non-tender cyst, no testicular mass, no pathology, and no new treatment necessary. (Def. Ex. E.) Mr. Mathews instructed Mr. Bell that Tylenol for pain relief was available as needed upon request, discussed his findings, and discussed the risks, benefits, adverse effect, and alternatives to treatments. (<u>Id</u>.) Mr.

Mathews' clinical notations conformed with the acceptable standards of medicine.

In the Complaint, Mr. Bell claims I deprived him of treatment due to grievances where he complains of medical mistreatment. However, this is absolutely untrue. At no time have I deprived Mr. Bell of medical care, or directed anyone to deprive him of care, in response to his filing of any grievance or appeal. I have not retaliated against Mr. Bell in any way.

I am diligent in documenting my contacts, diagnoses, and orders regarding patients under my care and in reviewing the health care of the medical providers I supervised. Proper care was provided to Mr. Bell to the best of my medical training, knowledge, and experience.

After Mr. Bell was released from the FDOC in September 2007, he was immediately transferred to the FCCC (Resident No. 991049). On September 20, 2007, he underwent a medical history and physical examination where he provided no noted complaints regarding the aforementioned cyst. (Def. Ex. L.) The FCCC records also reflect that he also did not discuss any issue relating to the cyst or his testicles for the following nine (9) months until he complained of a laceration on his testicle. (Def. Ex. M.)

In this federal action, Mr. Bell has attached claims for negligence and medical malpractice under the laws of the State of Florida. However, to date, I have not received any notice by mail of Mr. Bell's claim by Mr. Bell or by anybody representing him (i) of his intent to initiate litigation for medical negligence, (ii) with a list of health care providers who treated Mr. Bell before or after the times relevant to this action, and (iii) with an affidavit with supporting documentation from any medical health care provider who has provided any opinion on Mr. Bell's behalf that specifies how in his/her

> opinion my actions were allegedly negligent
> resulting in injury to Mr. Bell.

Madan's Declaration at 1-3, paragraphs 1-16.

Consistent with Defendant Madan's chronology, Defendant Selyutin, in his Declaration, avers that he provided proper medical care to Bell and never retaliated against him. Selyutin opines that the medical records show that "there is no factual basis to support Mr. Bell's allegations." Selyutin's Declaration at 2, paragraph 5. Selyutin states that, on September 18, 2006, he reviewed Bell's medical history, evaluated Bell's complaints of testicular pain, and examined Bell's testicle. Id. at 2, paragraph 8. As a result of that September 18th exam, Selyutin found "no evidence of abnormal enlargement of the vein that is in the scrotum (variococele), no testicular mass, and no testicle abnormality." Id.

Moreover, Defendant Mathews avers that he provided proper medical care to Bell to the best of his medical training, knowledge, and experience and never retaliated against him. Mathews' Declaration at 3, paragraph 16. He states, in pertinent part:

> On July 2, 2007, I reviewed his medical
> history, conducted an exam of his testicles,
> and evaluated Mr. Bell's complaints of
> intermittent soreness in his testicles. I
> found a small non-tender cyst, no testicular
> mass, no pathology, and no new treatment
> necessary. (Id.) Consequently, I determined
> that no new treatment was necessary. (Id.) I
> then instructed Mr. Bell that Tylenol for pain

relief was available as needed upon request, discussed my findings, and discussed the risks, benefits, adverse effect, and alternatives to treatments. (Id.)

During the times discussed here, PA's had authority to provide medical care to a patient while under appropriate supervision. The supervising physician would be responsible for reviewing the PA's clinical notations within 72 hours of the clinical consultation to ensure that the PA's findings conformed with the acceptable standards of medical care and treatment, and would co-sign the notations once the review is completed. The supervising physician would not be personally required to examine the patient. During the July 2007 consult, Dr. E. Madan was my supervising physician.

Shortly after the July 2007 examination, the results of Mr. Bell's June 2007 sonogram became available to me. (Def. Ex. F.) This sonogram, as well as, the prior medical consults confirm my July 2007 assessment.

Mr. Bell also *alleges* that, during the July 2007 exam, I stated, "There is no cure for the cyst on your testicles; and we cannot treat the cysts" and "You will be going home soon and can see a doctor when you get out of prison." However, these alleged 'quotations' are untrue. At absolutely no time would I state that there is no hope, no cure, or no treatment for a medical condition, or any similar negative statements. Instead, I would inform the patient that treatment is not indicated at present. Regarding the second alleged 'quotation,' if a[n] inmate patient is about to be released from FDOC custody, I would instruct him to visit a physician if the problem continues.

In the Complaint, Mr. Bell claims I deprived him of treatment due to grievances where he complains of medical mistreatment. However, this is absolutely untrue. At no time have I deprived Mr. Bell of medical care

> in response to his filing of any grievance or
> appeal. I have not retaliated against Mr.
> Bell in any way.

Mathews' Declaration at 2-3, paragraphs 10-15.

While Bell disagrees with the treatment provided to him by the Defendants, he nevertheless fails to state a federal constitutional claim of deliberate indifference. See Estelle, 429 U.S. at 107. Bell opines that proper medical treatment would have been a referral to a urologist and "readily available pain medications." Complaint at 9B, 9E. The record, however, reflects that the Defendants provided proper medical care to Bell relating to the cyst on his right testicle.

While Bell's allegations pertaining to the Defendants in this case concern a time span of approximately eleven months from September 12, 2006, through August 2007, see Complaint at 9B, 9D, 9F; P. Exs. C; O; X; MM, his complaints about his right testicle started eight years earlier in 1998. On September 11, 1998, while incarcerated at Union Correctional Institution, Bell requested to be tested for testicular cancer; Dr. H. Mach, M.D., saw Bell regarding his complaints of a pea size mass on his right testicle. Def. Ex. E at 2. In response, Dr. Mach ordered a testicular ultrasound (sonogram) and referred Bell to Dr. George Miquel, Jr., M.D., a urologist for a consultation. Def. Ex. F at 1-3. The ultrasound, dated September 17, 1998, indicated: "On the right side, there is a small anechoic structure adjacent to the upper

part of the testicle measuring 8 mm in size which is consistent with a small epididymal cyst."  The conclusory impression was a "small right epididymal cyst."  <u>Id</u>. at 3.

An epididymal cyst (spermatocele) is a retention cyst that is not considered life threatening unless there is an observable increase in size.  <u>See</u> Madan, Selyutin, and Mathews' Declarations at 2, paragraph 6.

> The [epididymal] cyst may fluctuate slightly as the fluid within the cyst is spermatozoa, but this is not the cause of the patient's symptoms. The types of symptoms to observe are redness, pain, and swelling in the scrotum. Small cysts are best left alone as are larger cysts that are an asymptomatic condition, and only when they are causing discomfort <u>*and*</u> increasing in size should additional [medical] treatment be considered, such as surgery (spermatocelectomy).

<u>Id</u>.

On October 1, 1998, Dr. Miquel consulted with Bell and documented that he had found no serious pathology, no asymptomatic growth, no testicular masses, and that the cyst was benign.  Def. Ex. F at 2; Madan, Selyutin, and Mathews' Declarations at 2, paragraph 7.  With such findings, Dr. Miquel recommended to discontinue the urology clinic.  <u>Id</u>.

Almost eight years later, on September 12, 2006, while incarcerated at FSP, Bell submitted a sick call request to the medical department with concerns relating to a cyst on his right testicle.  Complaint at 9B; P. Ex. C.  In the sick call request, he

stated that the problem or symptoms "[s]tarted about a week ago" and that it "hurts" and is "painful."  P. Ex. C.  In response to that request, Defendant Selyutin examined Bell on September 18, 2006.  Complaint at 9B; Def. Exs. E at 5; F at 5.  Selyutin reviewed Bell's medical history, evaluated his complaints of pain, and then examined his testicles.  Selyutin's Declaration at 2, paragraph 8.  As a result of the examination, Selyutin found no evidence of varicocele (the abnormal enlargement of the vein in the scrotum), no testicular mass, and no testicle abnormality.  Id.; Def. Ex. E at 5.

On October 18, 2006, Bell submitted another sick call request to the FSP medical department regarding the cyst on his right testicle.  Complaint at 9C.  Bell was seen in sick call on October 20, 2006.  Def. Ex. G at 3.  When he was not referred to a physician, Bell filed a grievance, alleging that he was not properly examined.  Def. Ex. G at 1-2.  In response to that grievance, Defendant Madan stated that Bell had been seen by Dr. Selyutin on September 18th, at which time he had been "appropriately assessed and evaluated" and that no testicle abnormality had been found.  Def. Ex. G at 3.  Moreover, Madan noted that "[w]hen you were again seen through sick call on 10-20-06 you as well offered no new findings and as such there was no justification for any further physician referral.  It will remain

your current institutional physician who decides all courses of treatment." Id.

In response to another grievance submitted by Bell, dated March 1, 2007, see Def. Ex. H at 1-2, Defendant Selyutin stated:

> [T]he information you provided has been reviewed. Review shows you were seen through sick call on 10-20-06 regarding your testicle pain and have not presented through sick call since that time. You were seen on 09-18-06 and the physician had no findings to your claim of any cyst on your testicle. You have the option of taking your concern through sick call. You will be treated based on verified medical symptoms, and it will be your current institutional physician who will decide all courses of treatment.

Def. Ex. H at 3.

On April 24, 2007, Bell had a consultation with Dr. J. Aviles, M.D., for complaints of pain in his right testicle. Def. Ex. F at 6. Dr. Aviles found no masses and ordered an ultrasound to verify the lack of pathology. Id.; Madan's Declaration at 2, paragraph 9. The ultrasound, dated June 5, 2007, indicated an epididymis cyst on the right testicle, measuring approximately 7-8 millimeters in diameter, and also indicated that there was no evidence of any testicle abnormalities. Id.; Def. Ex. H at 5. On June 28, 2007, Dr. Aviles responded to Bell's grievance, stating that Bell's medical call-out was rescheduled for July. Def. Ex. I at 3.

Defendant Mathews saw Bell on July 2, 2007, for Bell's complaints of intermittent soreness in his testicles. Mathews' Declaration at 2, paragraph 10; Def. Ex. E at 6. Mathews examined

Bell's testicles and found a small non-tender cyst, no testicular mass, and no pathology. Id. As a result of the examination and evaluation, Mathews determined that "no new treatment was necessary," instructed Bell that Tylenol for pain relief was available as needed upon request, and discussed his findings with Bell. Id. After the consultation, Defendant Madan, who was Mathews' supervising physician, reviewed the clinical notations and determined that Mathews' findings "conformed with the acceptable standards of medicine." Madan's Declaration at 3, paragraph 12; Def. Ex. E at 6. Moreover, shortly after Mathews' July 2nd examination, the results of Bells' June 5th sonogram became available to Mathews, see Def. Ex. F at 6, and confirmed Mathews' assessment of Bell's complaints, see Mathews' Declaration at 3, paragraph 13.

Mathews, in his Declaration, stated that he neither stated that "there is no hope, no cure, or no treatment" for Bell's medical condition nor made any other "similar negative statements." Mathews' Declaration at 2, paragraph 14. Instead, Mathews averred that he would have informed Bell "that treatment is not indicated" at the present time, and that, if an inmate patient was scheduled for release, he would have instructed that patient to visit a physician if the medical problem continued. Id.

On July 12, 2007, Bell filed another grievance, stating that Mathews had examined his testicles on July 2nd and had concluded

that there was no cure or treatment for the cyst on Bell's right testicle. Def. Ex. J at 1-3. Defendant Selyutin denied the grievance, stating in pertinent part:

> Review shows that on 7-2-07 you were seen, assessed, evaluated, and educated by Mr. Mathews regarding your testicle concern. You admitted to him that you had mild soreness intermittently only and that you would be going home in a few days and no limitations were described. You were in no acute distress. Examination showed your testicles descended, cords okay, small non-tender cyst palpated, testicles without masses/tenderness, rings tight no express[i]ble discharge or skin lesions. There was no treatment indicated. Your allegations of recklessness, causing serious harm, risk to your well-being and being in danger, depriving [you] of medical treatment is unfounded. It will remain your current institutional physician who will decide all courses of treatment. Your wanting something does not medically justify your receiving it.

Def. Ex. J at 4, dated July 26, 2007.

Bell had a sick call consultation with D. Johnson, a clinical associate, on July 24, 2007. Def. Ex. F at 7. At that examination, Johnson determined that Bell had been seen by Mathews on July 2nd and that no further treatment was required. Id. Bell submitted additional grievances concerning the cyst on his right testicle, see Def. Exs. J at 5-8; K at 1, 3, and the department responded that medical personnel had provided appropriate medical care, see Def. Exs. J at 9; K at 2, 4.

On September 15, 2007, Bell was released from the custody of the Florida Department of Corrections (FDOC). Def. Ex. A at 3; see

http://www.dc.state.fl.us/InmateReleases (showing a release date of September 15, 2007).  Thereafter, Bell was admitted to the Florida Civil Commitment Center (FCCC), and his medical condition was assessed on September 20, 2007.  Def. Ex. L.  At that examination, the history of present illness (HPI) on the medical history and physical form stated:

> This is a 44-year old new admission to the facility with no chronic medical conditions. He has no chronic complaints other than not being able to receive Seroquel, which he was on for sleep.

Id. at 1.  Bell denied any testicular disorders.  Id. at 2.  After the physical examination, which included the genitalia, the finding was: "[n]ormal history and physical examination."  Id. at 3.  The medical records reflect that Bell did not discuss any medical issue relating to his testicles with the medical staff until June 26, 2008, when he complained about a laceration on his testicle.  Id. at 3; Madan's Declaration at 3, paragraph 15.

While detained at FCCC, Bell submitted several sick call requests to the FCCC officials concerning the pain caused by the cyst.  Bell's Declaration at 7; P. SJ Exs. C-1; C-2; D-1.  Bell's FCCC medical records reflect that Howard Pinsky, an Advanced Registered Nurse Practitioner,[8] examined Bell on June 26, 2008, at which time he diagnosed the condition as an epididymitis cyst and treated the condition with Ciprofloxacin.  Bell's Declaration at 7;

---

[8] See P. SJ Ex. D-15 (showing Pinsky's signature and title).

P. SJ Ex. D-3.  Thereafter, Bell was treated for the epididymal cyst.  P. SJ Exs. D-5 through D-10.  On September 2, 2008, Dr. Lamour, the Chief Officer at FCCC, saw Bell and ordered follow-up sonograms to monitor the cyst.  P. SJ Exs. D-11; D-12; D-14; D-21.

Defendants contend that Bell has not demonstrated that his condition constituted a serious medical need.  <u>See</u> Defendants' Motion for Summary Judgment at 10-11.  The medical records for the relevant time period (September 2006 through August 2007) reflect that Bell's condition did not worsen or deteriorate, did not constitute a condition that required a second consultation with a urologist, and was not life threatening.  First, Bell received an ultrasound in September 1998 and another one again in June 2007.  <u>See</u> Def. Ex. F at 3, 6.  Both ultrasounds were conducted approximately nine years apart and showed no increase in the size of the cyst, which measured approximately 8 millimeters in both ultrasounds.  <u>Id</u>.  Second, in October 1998, a physician sent Bell to a urologist, and after that consultation, the urologist found nothing serious enough to justify another urological consultation.  <u>Id</u>. at 1-2.  Moreover, the type of cyst in this circumstance is not considered life threatening unless the cyst increases in size and results in the following symptoms in the scrotum: redness, pain, and swelling.  Madan, Selyutin, and Mathews' Declarations at 2, paragraph 6.

Over a span of nine years (1998-2007), the FDOC medical providers agreed that Bell did not suffer from a serious condition that justified additional specialized medical treatment. Additionally, while Bell alleges that the Defendants ignored a painful condition that he continued to endure, once Bell was released from FDOC custody, he did not report any testicular pain upon his admission to FCCC. <u>See</u> Def. Exs. L; M. Nevertheless, even assuming that Bell has satisfied the objective component by showing that he had a serious medical need, he has not shown deliberate indifference on the part of the Defendants. And, while Bell disagrees with the course of treatment chosen by the medical providers, Defendants' medical decisions were in accordance with acceptable standards of medicine. <u>See</u> Madan, Selyutin, and Mathews' Declarations.

Because the Defendants have met their initial burden of showing that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law, Plaintiff is required to present his own documentation (affidavits, depositions, answers to interrogatories, admissions on file, etc.) to show that there is a genuine issue for trial. Plaintiff has failed to provide any medical evidence to support his claim that the Defendants were deliberately indifferent to his serious medical needs during the relevant time period. In the Complaint and opposition to the summary judgment, Plaintiff acknowledges that he

received medical attention from the Defendants, but yet opines that they should have provided a different course of treatment, such as referral to a urologist and prescription strength medications.

Bell has not provided any competent evidence to rebut the Defendants' evidence, which establishes that Defendants Madan, Selyutin and Mathews' actions do not constitute an Eighth Amendment violation. Given Bell's symptoms from September 2006 through August 2007, Defendants Madan, Selyutin, and Mathews followed the proper medical protocols and procedures for the treatment of the cyst on Bell's right testicle. Indeed, Bell's "disagreement with the course of treatment" chosen by the medical providers "does not 'support a claim of cruel and unusual punishment.'" See Moots v. Sec'y, Dep't of Corr., 425 Fed.Appx. 857, 858 (11th Cir. 2011) (per curiam) (quoting Harris, 941 F.2d at 1505) (not selected for publication in the Federal Reporter). Accordingly, this Court will grant Defendants' Motion for Summary Judgment with respect to Plaintiff's Eighth Amendment claim of deliberate indifference to his serious medical needs.

## B. Retaliation

Plaintiff claims that the Defendants refused to provide proper medical care and treatment for the cyst as retaliation against him for his filing of grievances. See Complaint at 8C, 9C-9D.

> "The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir.

2003). "It is an established principle of
constitutional law that an inmate is
considered to be exercising his First
Amendment right of freedom of speech when he
complains to the prison's administrators about
the conditions of his confinement." Smith v.
Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008)
(citing Farrow, 320 F.3d at 1248).

An inmate may maintain a cause of action
for retaliation under 42 U.S.C. § 1983 by
showing that a prison official's actions were
"the result of [the inmate's] having filed a
grievance concerning the conditions of his
imprisonment." Farrow, 320 F.3d at 1248
(quotation marks omitted and emphasis added).
To establish a First Amendment retaliation
claim, a prisoner need not allege the
violation of an additional separate and
distinct constitutional right; instead, the
core of the claim is that the prisoner is
being retaliated against for exercising his
right to free speech. Id. To prevail on a
retaliation claim, the inmate must establish
that: "(1) his speech was constitutionally
protected; (2) the inmate suffered adverse
action such that the [official's] allegedly
retaliatory conduct would likely deter a
person of ordinary firmness from engaging in
such speech; and (3) there is a causal
relationship between the retaliatory action
[the refusal to provide proper medical care]
and the protected speech [the grievance]."
Mosley, 532 F.3d at 1276.

O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011) (per

curiam) (footnote omitted).

In Defendants' declarations supporting the summary judgment

motion, they aver that they "have not retaliated against Mr. Bell

in any way." Madan's Declaration at 3, paragraph 13; Selyutin's

Declaration at 2, paragraph 9; Mathews' Declaration at 3, paragraph

15. Specifically, they state that they did not deprive Bell of

medical care or direct anyone to deny him medical care in response to Bell's filing of any grievance or appeal. Id. In response to Defendants' declarations, Plaintiff relies upon his declaration, in which he avers that the Defendants deprived him of proper medical care as retaliation for his filing of grievances and for filing a prior civil rights action that was settled out of court in June 2006 (Case No. 3:03-cv-596-J-32HTS). See Bell's Declaration at 2, paragraph 7.

Even assuming arguendo that Plaintiff has established the first two prongs, he has failed to allege sufficient facts to support the third prong. In Williams v. Brown, 347 Fed.Appx. 429, 435 (11th Cir. 2009) (per curiam) (not selected for publication in the Federal Reporter), the Eleventh Circuit upheld the district court's dismissal of a retaliation claim as vague and conclusory, noting the following:

> Although Williams's complaint alleges that a constitutional violation occurred, the complaint fails to allege facts that associate Johnson or Tompkins with that violation. Williams simply asserts that "Brown, Johnson, and Tompkins subjected [him] to a retaliatory negative transfer twice as far from [his] family. . . ." This assertion does not raise his right to relief against Johnson and Tompkins above the speculative level. Twombly, 550 U.S. at 555, 127 S.Ct. at 1965.[9] Accordingly, the district court correctly dismissed Williams's complaint against Johnson and Tompkins.

---

[9] Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).

Summary judgment is proper on Plaintiff's retaliation claim since he "has not established a causal relationship" between his filing of grievances (and a prior civil rights action) and the Defendants' alleged actions.  <u>Farrow</u>, 320 F.3d at 1249 (citing <u>Avirgan v. Hull</u>, 932 F.2d 1572, 1577 (11th Cir. 1991) ("If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence.")).  "The evidence presented cannot consist of conclusory allegations or legal conclusions." <u>Avirgan</u>, 932 F.2d at 1577 (citation omitted).  Plaintiff's mere assertion that he was a known writ-writer at FSP is insufficient to establish a causal connection between his filing of grievances and a prior civil rights action and the Defendants' alleged refusal to provide medical treatment for the cyst on his right testicle.  <u>See</u> Declaration at 2, paragraph 7.  Indeed, Defendants have met their initial burden of showing the absence of a genuine issue of material fact, and Plaintiff has not come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence.  Therefore, Defendants' Motion for Summary Judgment will be granted with respect to the retaliation claim.

## C. Qualified Immunity

Defendants contend that they are entitled to qualified immunity.  Defendants' Motion for Summary Judgment at 21-22.

> To receive qualified immunity, [a] public official must establish that he was engaged in a "discretionary function" at the time he committed the allegedly unlawful act. <u>Holloman ex. rel. Holloman v. Harland</u>, 370 F.3d 1252, 1263-64 (11th Cir. 2004) . . . . If the official demonstrates that he was engaged in a discretionary function, the burden shifts to the plaintiff to prove that the official is not entitled to qualified immunity.  <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1358 (11th Cir. 2003).  This requires plaintiff to satisfy the two-part test prescribed by the Supreme Court in <u>Saucier v. Katz</u>, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).  Under <u>Saucier</u>, a plaintiff must first show that the defendant violated a constitutional right and then demonstrate that the constitutional right was clearly established at the time of the alleged wrongful act.  533 U.S. at 201, 121 S.Ct. at 2156.  If a court, after viewing all the evidence in the light most favorable to the plaintiff and drawing all inferences in his favor, determines that the plaintiff has satisfied these two requirements, the defendant may not obtain qualified immunity. <u>Holloman</u>, 370 F.3d at 1264.

<u>Bryant v. Jones</u>, 575 F.3d 1281, 1295 (11th Cir. 2009), <u>cert</u>. <u>denied</u>, 130 S.Ct. 1536 (2010).  Following the United States Supreme Court's decision in <u>Pearson v. Callahan</u>, 129 S.Ct. 808, 815-16 (2009), this Court is "free to consider these elements in either sequence and to decide the case on the basis of either element that is not demonstrated."  <u>Youmans v. Gagnon</u>, 626 F.3d 557, 562 (11th Cir. 2010).

It is undisputed that Defendants were engaged in discretionary functions during the events in question. Defendants did not violate Plaintiff's constitutional rights and are therefore entitled to qualified immunity.

### D. Pendent State Law Claims

Under 28 U.S.C. § 1367(a), a district court may exercise supplemental jurisdiction over state law claims related to the federal court action. Defendants contend that since Bell has failed to state a claim under the Eighth Amendment or First Amendment, then accordingly, the Court should decline to exercise supplemental jurisdiction over his state law claims. Defendants' Motion for Summary Judgment at 23-24. Since Plaintiff's Eighth Amendment and First Amendment claims have not survived the summary judgment stage, this Court will not exercise supplemental jurisdiction over Plaintiff's state law claims. See 28 U.S.C. § 1367(c)(3) (stating that the district courts may decline to exercise supplemental jurisdiction over a claim under § 1367(a) when the court has dismissed all claims over which it has original jurisdiction).

### E. Conclusion

This Court finds that Defendants have met their initial burden of showing, by reference to affidavits and other documentary evidence, that there are no genuine issues of material fact that should be decided at trial with respect to Plaintiff's claims

against them. Defendants have presented evidence that they appropriately addressed Plaintiff's medical needs, were not deliberately indifferent to those needs, and did not retaliate against Plaintiff. Given the strong and consistent statements of the Defendants and the lack of any other factual evidence to support Plaintiff's claims, this is the type of case as to which summary judgment is appropriate. See Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (stating "a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment"). Thus, this Court concludes that no reasonable jury could believe, based upon the evidence of record, that the Defendants were deliberately indifferent to Plaintiff's serious medical needs or that they retaliated against him.

Under these circumstances, the undersigned concludes that there are no disputed facts to be tried by a jury and that summary judgment in favor of the Defendants is due to be entered. Accordingly, Defendants' Motion for Summary Judgment (Doc. #86) will be granted, and judgment will be entered in their favor.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. Defendants' Motion for Summary Judgment (Doc. #86) is **GRANTED.**

2.   The Clerk shall enter final judgment in favor of the Defendants.

3.   This Court will not exercise supplemental jurisdiction over Plaintiff's state law claims, and therefore those state law claims are **DISMISSED without prejudice**.

4.   The Clerk of Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida this 7th day of February, 2012.


MARCIA MORALES HOWARD
United States District Judge


sc 2/7
c:
Gregory V. Bell
Counsel of Record